IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDUVIGES MARTINEZ HERNANDEZ, | ) | CASE NO.  3:25-CV-02591-DAR |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE DAVID A. RUIZ |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| KEVIN RAYCRAFT, *et al.*, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Respondents. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Eduviges Martinez Hernandez ("Martinez Hernandez" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and the Return of Writ/Motion to Dismiss (Doc. No. 9).  Petitioner is being held in the custody of the Detroit Field Office of U.S. Immigration and Customs Enforcement ("ICE") at the Corrections Center of Northwest Ohio.  (Doc. No. 1 at 2.)

For the following reasons, it is recommended that the Court DISMISS all Respondents from this action except for Defendant Raycraft.  It is further recommended that the Court GRANT Martinez Hernandez's Petition and ORDER Respondent to provide Martinez Hernandez with a bond hearing under 8. U.S.C. § 1226(a) within seven (7) days of the adoption of this Report and Recommendation.

1

## I.  Factual Background[1]

Martinez Hernandez, a 60-year-old woman, has resided in the United States since 1998, mainly in the Detroit, Michigan area.  (Doc. No. 1 at 10.)

On August 20, 2025, Martinez Hernandez took a wrong turn on a highway in Detroit, which led her to a checkpoint at the U.S./Canada border.  (*Id.*)  Customs and Border Patrol officials arrested her, and Martinez Hernandez has since been detained at the Corrections Center of Northwest Ohio in Stryker, Ohio.  (*Id.*)

The Department of Homeland Security ("DHS") placed Martinez Hernandez in removal proceedings before the Cleveland Immigration Court pursuant to 8 U.S.C. § 1229a.  (*Id.*)  DHS charged Martinez Hernandez with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection, and under 8 U.S.C. §1182(a)(7)(A)(i)(I), as an immigrant who was not in possession of a valid entry document at the time of application for admission.  (*Id.* at 10-11.)

Martinez Hernandez is a single mother and lived with both of her children her prior to her detention.  (*Id.* at 11.)  One child is a U.S. citizen and the other resides legally in the United States as a recipient of Deferred Action for Childhood Arrivals.  (*Id.*)  Martinez Hernandez states that she has no prior arrests or criminal history anywhere in the world, and she has never before been charged with any violation of U.S. immigration laws.  (*Id.*)  "Based on her U.S. citizenship of her one child, her lengthy residence in the United States, and her lack of criminal history," Martinez Hernandez filed an application for Cancellation of Removal for Non-Permanent Residents under 8 U.S.C. § 1229b(b) with the immigration court.  (*Id.*)

After Martinez Hernandez's arrest and transfer to the Corrections Center of Northwest Ohio, "ICE issued a custody determination to continue [Martinez Hernandez]'s detention without an opportunity to post

---

[1] "[D]ocuments attached to the pleadings become part of the pleadings and may be considered" by the Court on a motion to dismiss.  *Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007)).

bond or be released on other conditions." (*Id.*)

On October 16, 2025, Martinez Hernandez requested a bond redetermination hearing before an immigration judge ("IJ").  (Doc. No. 1-2 at 2-4.)  On October 28, 2025, the IJ determined that the court lacked jurisdiction to hold a custody hearing based on the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado.*  (Doc. No. 1-3; Doc. No. 9-1.)

On November 19, 2025, Martinez Hernandez timely appealed the IJ's decision to the BIA (Doc. No. 1-4), which appears to remain pending.  (Doc. No. 1 at 12; Doc. No. 10 at 8.)

On November 28, 2025, Martinez Hernandez filed a motion requesting the Cleveland Immigration Court hold a bond hearing based on her class membership in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873 (C.D. Cal.).  (Doc. No. 10 at 14-15; Doc. No. 10-2.)

On December 2, 2025, the IJ denied the motion.  (Doc. No. 10-4 at 1-2.)

On December 20, 2025, Martinez Hernandez filed another motion requesting the Cleveland Immigration Court hold a bond hearing based on her class membership in *Maldonado Bautista*.  (Doc. No. 10 at 14-15; Doc. No. 10-3.)

On January 2, 2026, the IJ denied the motion.  (Doc. No. 10-4 at 3-4.)

A master hearing before the immigration court set for December 17, 2025 was continued to January 14, 2026, at the request of Martinez Hernandez.  (Doc. No. 9 at PageID# 118; Doc. No. 9-2.)  It appears the master hearing is now set for March 11, 2026.  (Doc. No. 10 at 9; Doc. No. 10-1.)

## II.      Federal Habeas Petition

On November 25, 2025, Martinez Hernandez filed her habeas Petition pursuant to § 2241.  (Doc. No. 1.)  Attached to the Petition was an Application for Issuance of an Order to Show Cause pursuant to 28 U.S.C. § 2243, asking the Court to an issue an order directing Respondents to show cause within three days why the Petition should not be granted.  (Doc. No. 1-1.)

3

On December 10, 2025, the Court referred this matter to the undersigned for a report and recommendation regarding the Petition.  (Doc. No. 5.)  The Court disagreed that § 2243 compelled the Court to order the government to respond within three days.  (*Id.*)  The Court left the matter of expedited briefing "to the sound discretion" of the undersigned.  (*Id.*)

On December 11, 2025, the Court issued an Order establishing an expedited briefing schedule.  (*Id.* at 6.)

On January 12, 2026, Respondents filed a Response to the Petition for Writ of Habeas Corpus.  (Doc. No. 9.)

On February 5, 2026, Martinez Hernandez filed the Traverse.  (Doc. No. 10.)

On February 12, 2026, Respondents filed a Reply in Support of Dismissing the Petition for Writ of Habeas Corpus.  (Doc. No. 17.)

## II. Law and Analysis

### A.    Proper Respondent

In a footnote, Respondents argue that "[i]n the ICE habeas context," the proper respondent is the "Field Office Director for ICE."  (Doc. No. 9 at PageID# 117 n.1.)  Therefore, Respondents assert, the remaining Respondents are not proper respondents.  (*Id.*) (citing *Mendoza v. Raycraft*, No. 4:25cv2183, 2025 WL 3157796, at *8 (N.D. Ohio Nov. 12, 2025)).

The law requires that a district court shall direct a writ of habeas corpus "to the person having custody of the person detained." 28 U.S.C. § 2243; *see Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003) (citing *Braden v. 30th Judicial Circuit Ct. of Ky.*, 410 U.S. 484, 494–95, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973)) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.").

4

The Sixth Circuit noted that, historically, "the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner and ... on the convenience of the parties and the court." *Roman*, 340 F.3d at 319 (citing *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999)). The "general rule" requires a petitioner to name "the individual having day-to-day control over the facility in which [the petitioner] is being detained" as a respondent to his habeas corpus petition. *Id.* (citing *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000), *cert. denied*, 534 U.S. 816, 122 S.Ct. 43, 151 L.Ed.2d 15 (2001)). This is known as the "immediate custodian rule." *Id.*

The question for an alien held in a state or county prison under an agreement with ICE is whether their "immediate custodian" is the warden of the facility where the alien is detained or the ICE District Director of the district where the alien is being detained. *Id.* at 320. The Sixth Circuit addressed this issue in *Roman*. After considering the various ways in which other courts handled this issue, they concluded that "although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners," and is the proper respondent to a habeas petition by an alien in ICE custody. *Id.* (citing *Henderson*, 157 F.3d at 122); *see also Orozco-Valenzuela v. Holder*, No. 1:14 CV 1669, 2015 WL 1530631, at *4 (N.D. Ohio Apr. 6, 2015) (Field Office Director of the Detroit Field Office of ICE is the proper respondent for a habeas petition brought by an alien in ICE custody at detention facilities in Ohio); *Khodr v. Adducci*, 697 F. Supp. 2d 774, 776 (E.D. Mich. 2010) ("The Court will follow appropriate Sixth Circuit authority and find the ICE District Director is the proper party to be sued in the habeas case here.").

Under Sixth Circuit precedent, the proper respondent is Respondent Kevin Raycraft, Field Office Director of the Detroit Field Office. Therefore, the undersigned recommends that all other Respondents be dismissed from this action.

**B.  Subject Matter Jurisdiction**

Respondents argue that Martinez Hernandez's claims should be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Doc. No. 9 at PageID# 118.)  Respondents assert that 8 U.S.C. § 1252(g) bars review of Martinez Hernandez's claims, as "[t]he Secretary of Homeland Security's decision to *commence removal proceedings*, includes the decision to detain an alien pending such removal proceedings."  (*Id.*) (emphasis in original) (citations omitted).

Respondents further argue that that 8 U.S.C. § 1252(b)(9) also bars review of Martinez Hernandez's claims, as it "is an 'unmistakable zipper clause' that 'channels judicial review of all [claims arising from deportation proceedings]' to a court of appeals in the first instance."  (*Id.* at PageID# 119) (citation omitted) (additional internal quotation marks omitted).  Respondents maintain that, reading § 1252(b)(9) and 8 U.S.C. § 1252(a)(5) together, "'any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-review] process.'"  (*Id.*) (citations omitted).  Since Martinez Hernandez "challenges the decision and action to detain her, which arises from DHS's decision to commence removal proceedings," Respondents argue that it "is thus an 'action taken . . .  to remove [her] from the United States.'"  (*Id.* at PageID# 120) (citations omitted).  Citing 8 U.S.C. § 1252(e)(2), Respondents assert that "Congress severely limited this Court's jurisdiction to three narrowly tailored issues: whether petitioner is an alien; whether the petitioner was ordered removed; and whether petitioner has been lawfully admitted and such status has not been terminated." (*Id.* at PageID# 121.)  As Martinez Hernandez's Petition does not challenge any of these three things, Respondents maintain that "the statute does not confer this Court with jurisdiction."  (*Id.*)

Martinez Hernandez responds that neither statutory provision bars jurisdiction in this case.  (Doc. No. 10 at 3.)  Martinez Hernandez argues that the Supreme Court has rejected Respondents' argument regarding the phrase "commence proceedings" in § 1252(g).  (*Id.*) (citing *Reno v. Am. Arab Anti-*

6

*Discrimination Comm.*, 25 U.S. 471, 482 (1999)).  In addition, Martinez Hernandez asserts that Respondents fail to cite any Sixth Circuit precedent supporting Respondents' claim that this Court lacks jurisdiction over the Petition pursuant to § 1252(g).  (*Id.* at 4.)  Martinez Hernandez maintains that the out-of-circuit cases on which Respondents rely are distinguishable, as Martinez Hernandez is not subject to a final order of removal. (*Id.*)  Martinez Hernandez further argues that the Supreme Court also rejected Respondents' interpretation of the phrase "arising from" in § 1252(b)(9).  (*Id.*) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018)). Martinez Hernandez asserts that Respondents fail to "provide[] any legal basis for the proposition that this court lacks jurisdiction to consider Petitioner's case."  (*Id.* at 5.)

In its Reply in Support of Dismissing the Petition, Respondents cite a Third Circuit case holding that § 1252(b)(9) "bars subject matter jurisdiction over habeas claims arising from actions to remove an alien, including those where the injury cannot be remedied after the fact – such as alleged illegal detention claims." (Doc. No. 17 at 3) (citing *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026)).

The undersigned notes that there is a line of cases within this district holding that the Court lacks jurisdiction over habeas petitions such as this one.  *See, e.g., Munoz Nataren v. Raycraft*, No. 4:26cv212, 2026 WL 214368, at *3 (N.D. Ohio Jan. 28, 2026); *Amaya-Velis v. Raycraft*, --- F. Supp. 3d ---, 2026 WL 100596, at *3 (N.D. Ohio Jan. 14, 2026). However, other opinions from this Court—which Respondents fail to acknowledge—hold that the Court has jurisdiction over such habeas cases.  *See, e.g., Hu v. Raycraft*, Case No. 4:26-cv-113, 2026 WL 539117, at **2-5 (N.D. Ohio Feb. 26, 2026) (report and recommendation); *Leiva Lemus v. Lynch*, Case No.  4:26-cv-203, 2026 WL 496731, at **2-5 (N.D. Ohio Feb. 23, 2026); *Singh v. Stevens*, Case No. 3:26-CV-133, --- F. Supp. 3d. ---, 2026 WL 456489, at **2-3 (N.D. Ohio Feb. 18, 2026); *Zhen v. Doe*, Case No. 3:25-cv-01507-PAB, 2025 WL 2258586, at **3-4 (N.D. Ohio Aug. 7, 2025).

In *Leiva Lemus*, the Court rejected Respondents' arguments that this Court lacked jurisdiction under §1252(g) as follows:

7

The government next argues that § 1252(g) bars jurisdiction over Lemus's petition. (Doc. No. 6, at 10.) Section 1252(g) provides, in relevant part, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). As it did under § 1252(b)(9), the government again argues that issues regarding an immigrant's detention and their entitlement to a bond hearing "aris[e] from" the decision to commence removal proceedings and thus fall within § 1252(g)'s jurisdictional bar. (Doc. No. 6, at 10.) Again, the government reads the statute too expansively.

The Supreme Court rejected as "implausible" that Congress intended § 1252(g) to cover "all claims arising from deportation proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999) (hereinafter, "*AADC*"). Rather, the Supreme Court "narrow[ly] read[ ]" § 1252(g), *id.* at 487, to only cover the "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original). The Supreme Court adopted this narrow reading in light of § 1252(g)'s specific purpose: to protect the executive branch's discretion to decline pursuit of certain individuals without prejudice to its ability to pursue others.[3] *See id.* at 483–84.

Here, Lemus does not challenge the attorney general's decision to commence removal proceedings, to adjudicate his case, to execute a removal order, or any exercise of discretion within those three discrete tasks. Instead, Lemus challenges the attorney general's failure to provide him a bond hearing to which he claims statutory entitlement. While an immigrant's detention is technically related to the attorney general's decision to commence proceedings, that technical relation is insufficient to trigger § 1252(g). *See Jennings*, 583 U.S. at 294 (plurality) ("[In *AADC*,] [w]e did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions[.]" (citing *AADC*, 525 U.S. at 482–83)); *Alonso v. Tindall*, No. 3:25-cv-652, 2025 WL 3083920, at *2 (W.D. Ky. Nov. 4, 2025) ("A claim of unlawful detention [without a bond hearing] does not arise from the commencement of removal proceedings 'within the meaning of § 1252(g) simply because the claim relates to that discretionary, prosecutorial decision.'" (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)) (cleaned up) (further citations omitted)). Most courts in the Sixth Circuit to have addressed the issue agree that challenges to the government's failure to provide a detained immigrant with a bond hearing do not fall within the narrow scope of § 1252(g). *See e.g., Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *4 (W.D. Mich. Oct. 28, 2025); *Alonso*, 2025 WL 3083920, at *3. Section 1252(g) does not bar review of Lemus's petition.

The out-of-circuit case law on which the government relies is all distinguishable. *Alvarez v. ICE* and the three Central District of California cases

the government cites are distinguishable because the claimants there, rather than challenging a failure to provide a bond hearing, challenged *detention itself*. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016); *Valencia-Mejia v. United States*, No. 08-cv-2943, 2008 WL 4286979, at *1 (C.D. Cal. Sept. 15, 2008); *Wang v. United States*, No. 10-cv-389, 2010 WL 11463156, at *1 (C.D. Cal. Aug. 18, 2010); *Herrera-Correra v. United States*, No. 08-cv-2941, 2008 WL 11336833, at *1 (C.D. Cal. Sept. 11, 2008). *Tazu v. Att'y Gen. United States* is even more distinguishable; the petitioner there directly challenged execution of a pending removal order. *See* 975 F.3d 292, 294 (3d Cir. 2020) ("[Petitioner] filed a habeas petition, asking the [d]istrict [c]ourt to stop the Attorney General from executing his valid removal order[.]"). The government points to no binding or persuasive authority supporting the proposition that § 1252(g) bars Lemus's petition. As with § 1252(b)(9), § 1252(g) presents no bar here.

2026 WL 496731 at **4-5.

In *Hu*, the Court rejected Respondents' arguments that this Court lacked jurisdiction under §1252(b)(9) as follows:

> Next, Respondents argue that Sections 1252(a)(5) and 1252(b)(9) bar this Court's "review of decision to detain and/or remove." Doc. 9, at 8. Section 1252(a)(5) states that the court of appeals is the "sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter" except for subsection (e). Under Section 1252(b)(9):

> > Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under Section 2241 of Title 38 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review an order or such questions of law or fact.

> 8 U.S.C. § 1252(b)(9).

> The Supreme Court has "described § 1252(b)(9) as a 'zipper clause' which "consolidate[s] 'judicial review' of immigration proceedings into one action in the court of appeals." *St. Cyr*, 533 U.S. at 313.[5] But the Court has made clear that "it applies *only* '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Id*. (emphasis added). As a result, "§ 1252(b)(9) does not clearly apply to actions brought pursuant to the general habeas statute, and thus cannot repeal that statute either in part or in whole." *Id*. at 314; *see id*. at 302

> (noting that the writ of habeas corpus historically "encompassed detentions based on errors of law, including the erroneous application or interpretation of statutes"); *see also Ozturk*, 136 F.4th at 399. Here, Hu is not challenging an order of removal. Respondents therefore have not shown that section 1252(b)(9)'s jurisdictional-bar applies to Hu's petition.

2026 WL 539117 at \*4. *See also Lopez v. Noem*, Case No. 3:26 CV 128, 2026 WL 395202, at \*4 n.5 (N.D. Ohio Feb. 12, 2026) ("Respondents misleadingly cite *Khalil* as supporting their proposition that Section 1252(b)(9) divests district courts of subject matter jurisdiction over habeas claims arising from actions to remove noncitizens, including alleged illegal detention claims. . . . An actual review of *Khalil*, however, illustrates that this Court actually retains jurisdiction over detention-based claims like Petitioner's.")

The Court finds persuasive the majority of opinions in this district finding that §§ 1252(g) and 1252(b)(9) do not bar the Court from considering habeas petitions such as this one.  Therefore, the Court finds it has jurisdiction over Martinez Hernandez's Petition challenging her lack of a bond hearing.[2]

## C.    Exhaustion

Respondents argue that the Court should dismiss the Petition, as Martinez Hernandez has failed to exhaust administrative remedies.  (Doc. No. 9 at PageID# 121.)  Respondents assert that other judges in this district have dismissed similar habeas petitions for failure to exhaust administrative remedies.  (*Id.* at PageID# 122) (citations omitted).

Martinez Hernandez argues that she has attempted to exhaust all her administrative remedies.  (Doc. No. 10 at 8.)  However, "requiring [her] to pursue further administrative remedies would certainly be futile and result in additional hardship for [her]...."  (*Id.*)  Martinez Hernandez asserts that she appealed to the BIA "in vain," as the BIA "is bound by [its] own precedent."  (*Id.*)

---

[2] As noted *supra*, in *Leiva Lemus*, the Court found the distinct between a challenge to detention, versus a challenge to a lack of a bond hearing, to be an important one for jurisdictional purposes.  2026 WL 496731 at \*\*2-5.  The Court concluded a challenge to detention is "likely barred."  *Id.* at \*4.

"[T]he Sixth Circuit has not yet decided whether courts should impose prudential exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention."  *Ramirez Moreno Ramirez Moreno v. Lynch*, Case No. 4:26 CV 275, 2026 WL 496634, at *2 (N.D. Ohio Feb. 23, 2026) (citations omitted).  "Without guidance, the courts in this circuit have largely applied Ninth Circuit precedent but have recached conflicting results. *Compare Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (N.D. Ohio 2025) ('Here, all three [Ninth Circuit] factors weigh against requiring exhaustion.'), *with Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 531 (N.D. Ohio 2025) (dismissing petition for failing to exhaust available administrative remedies)." *Ramirez Moreno*, 2026 WL 496634, at *2.

In *Ramirez Moreno*, the Court found the petition was not required to exhaust his administrative remedies, explaining as follows:

> Applying these factors, this Court finds that all three weigh against requiring exhaustion. In so finding, this Court joins several other in this circuit that have reached the same conclusion in analogous cases. *E.g.*, *Echavvarria Morales v. Noem*, 2026 WL 100583, at *3 (N.D. Ohio Jan. 14, 2026); *Lopez-Campos*, 797 F. Supp. 3d at 778; *Puerto-Hernandez*, 2025 WL 3012033, at *7.
>
> First, the issue raised in the Petition is purely legal in nature and does not require the agency to develop the record. The Petition requires the Court to interpret two statutes (Section 1226(a) and Section 1225(b)(2)(A)) to determine which applies to Petitioner. Matters of statutory interpretation belong historically within the province of the courts. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").
>
> Second, there is nothing in the record that suggests that relaxing the exhaustion requirement here would encourage the deliberate bypass of the administrative scheme. Petitioner raises a constitutional challenge to his continued detention without a bond hearing. The Sixth Circuit has previously signaled that such challenges are beyond administrative review. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) ("[A]n alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges)[.]"); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("Exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.").

11

Third, administrative review is not likely to change Respondents' view that Section 1225(b)(2)(A) applies to Petitioner. BIA (the reviewing agency), in conjunction with the Department of Justice, has made clear its interpretation mandating detention of noncitizens like Petitioner during removal proceedings. *Puerto-Hernandez*, 2025 WL 3012033, at *7 ("It is simply implausible that the BIA would change its position, regardless of the arguments set forth in this particular case, thus precluding meaningful review." (citing *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025)).

Further, even if this Court were to find that prudential concerns warranted exhaustion, it could still choose to waive exhaustion when the "legal question is fit for resolution and delay means hardship, or when exhaustion would prove futile." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation and internal quotation marks omitted); *see also Shearson*, 725 F.3d at 594 ("[T]here are some exceptions to the exhaustion doctrine. For example, exhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[ ],' if the 'administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.' " (citation omitted)).

Here, as discussed above, the legal question is fit for exhaustion and the pursuit of administrative remedies would almost certainly be a futile gesture. The Petition is just one—of what the Court can only estimate are thousands—of petitions seeking analogous relief because of BIA's and ICE's recent interpretative shift. Immigration courts across the country are denying bond hearings for noncitizens like Petitioner, claiming the courts lack jurisdiction under recent BIA guidance. This Court cannot think of anything more clearly amounting to a "futile gesture" than requiring Petitioner to spend time appealing the Immigration Court's decision to deny him a bond hearing to the very agency that passed down that unequivocal directive. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025) (holding that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A)). *See also Contreras-Lomeli v. Raycraft*, 2025 WL 2976739, at *4 (E.D. Mich. Oct. 21, 2025) ("Waiver based on futility is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought." (quoting *Cooper v. Zych*, 2009 WL 2711957, at *2 (E.D. Mich. Aug. 25, 2009))); *Barco Mercado v. Francis*, 2025 WL 3295903, at *12 (S.D.N.Y. Nov. 26, 2025) ("To force [Petitioner] to request a bond hearing from an immigration judge—which would be denied under the BIA's recent decision and, even if it were held, would result in release being denied under that decision—and then appeal that denial to the same BIA that has prevented immigration judges from hearing bond requests in the first place, all before allowing [Petitioner] to seek judicial review [of his detention]...would be 'Kafkaesque.' ").

12

2026 WL 496634 at **2-3.  *See also Gonzalez Lopez v. Raycraft*, Case No. 4:25CV2449, 2025 WL 3280344, at **2-4 (N.D. Ohio Nov. 25, 2025) (finding prudential exhaustion not required).

This Court agrees with the reasoning in *Ramirez Moreno* and *Gonzalez Lopez* and concludes that prudential exhaustion is not required in this case.  Furthermore, even if prudential concerns warrant exhaustion, given the facts of this case, administrative exhaustion should be waived.

## D.  Merits

Martinez Hernandez argues that her mandatory detention under 8 U.S.C. § 1225(b)(2)(A) "violates the plain language of the Immigration and Nationality Act (INA)," as § 1225(b)(2)(A) "does not apply to individuals like Petitioner who previously entered and are now residing in the United States."  (Doc. No. 1 at 3.)  Instead, 8 U.S.C. § 1226(a), which "allows for release on conditional parole or bond," applies to individuals such as Martinez Hernandez.  (*Id.*)  Martinez Hernandez also alleges a due process violation based on her mandatory continued detention.  (*Id.* at 13-14.)

Respondents argue that Martinez Hernandez "is an applicant for admission (specifically, an alien present without admission)" and was "placed directly into removal proceedings under 8 U.S.C. § 1229a." (Doc. No. 9 at PageID# 127.)  Respondents assert that Martinez Hernandez "is therefore subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A) and ineligible for a custody redetermination hearing before an IJ." (*Id.*)  Respondents maintain that "applicants for admission may only be released from detention if DHS invokes its discretionary parole authority under 8 U.S.C. 1182(d)(5)."  (*Id.* at PageID# 129.)  Respondents also "advise[d]" the Court that a declaratory judgment issued by the Central District of California finding that a "nationwide class of members, such as Petitioner, were unlawfully detained under 8 U.S.C. § 1225(b)(2) rather than § 1226(a)" has "no preclusive effect and should not be considered as a basis to grant

the Petition." (*Id.* at PageID# 132-33) (citing *Maldonado Bautista v. Santacruz*, Case No. 5:25 CV 1873 (C.D. Cal. Dec. 18, 2025)).[3]

Martinez Hernandez responds that in making their arguments as to the application of § 1225(b)(2)(A), "Respondents fail to address the overwhelming majority of district court cases – including within the Sixth Circuit and Northern District of Ohio – holding that noncitizens, such as Petitioner, who have been apprehended inside the United States rather than at the border, may be lawfully detained only under § 1226(a)." (Doc. No. 10 at 9.) Martinez Hernandez argues that "[t]his Court should join the overwhelming majority of district courts that have considered and rejected the government's position, including those in the Sixth Circuit and the Northern District of Ohio." (*Id.* at 13) (citation omitted). In addition, Martinez Hernandez asserts that Respondents fail to "specifically address" her claim that "the government's misapplication of § 1225(b) to unlawfully detain her and continue to deny her bond violates her due process rights." (*Id.* at 14) (citations omitted).

Respondents, relying on out of district cases, argue that "[r]ecent decisions are clear that aliens who entered the United States without parole or inspection, like Petitioner, 'shall be detained.'" (Doc. No. 17 at 1-3) (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Singh v. Noem*, No. 2:25-cv-00157, 2026 WL 74558 (E.D. Ky. Jan. 9, 2026); *Lucero v. Field Off. Dir.*, No. 1:25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025)).

In *Chavez v. Director of Detroit Field Office*, this Court rejected Respondent's arguments that petitioners such as Martinez Hernandez are subject to mandatory detention under § 1225(b)(2)(A):

### 2. 8 U.S.C. §§ 1225(b)(2) & 1226(a)

The government's primary objection to the R&R is that § 1225(b)(2) mandates Chavez's detention without bond. According to the government, any immigrant "in the United States without admission or parole that [is] placed in removal

---

[3] In her Traverse, Martinez Hernandez alleges that she is part of the *Maldonado Bautista* class. (Doc. No. 10 at 14-15.) Because the Court finds that Martinez Hernandez is otherwise entitled to relief, it does not reach the effect of *Maldonado Bautista* here. *Ramirez Moreno*, 2026 WL 496634, at *1 n.1

proceedings under 8 U.S.C. § 1229a [is]...subject to detention under § 1225(b)(2)(A), and thus ineligible for a bond redetermination hearing[.]" (Doc. No. 12, at 4.) Upon review of the text, structure, and history of the statute, the Court cannot agree with the government's interpretation of § 1225(b)(2).

When interpreting statutes, courts "must give effect to the clear meaning of the statutes as written." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation and quotation marks omitted). In so doing, the courts "assign each word of the statute its ordinary, contemporary, common meaning..., while keeping in mind that statutory language has meaning only in context." *Id.* (citations, quotation marks, and alterations omitted). Finally, "[i]t is a cardinal principal of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (citation and quotation marks omitted).

### a. The Relevant Text

The Court begins with the relevant text. Section 1226(a) states, in relevant part, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1225(b)(2) then states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[.]" 8 U.S.C. § 1225(2)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "Admission" in turn is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Putting these statutes together, it would appear that § 1226(a) provides a general rule, while § 1225(b)(2) provides a carveout to that rule. Section 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer.

On this reading, § 1225(b)(2) does not apply to Chavez. While he is present in the United States without admission (Doc. No. 6-1 ¶¶ 5–6), and thus an "applicant for admission," he is not seeking to lawfully enter. Indeed, it would strain the words of the statute to say that one who has been in the United States since 2001 is seeking to enter it. *See, e.g., Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("those like

15

[petitioner], who have been here for years upon years and never proceeded to obtained any form of citizenship ...are not 'seeking' admission"); *Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.' "). Rather, as an immigrant arrested and detained while "already in the country[,]" *Jennings*, 583 U.S. at 289, Chavez falls more aptly within § 1226(a)'s default rule. *See, e.g., Lopez-Campos*, 2025 WL 2496379, at *8 ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border.").

The government argues, however, that Chavez's very presence in the United States as an unadmitted immigrant renders him subject to § 1225(b)(2). (Doc. No. 12, at 4–5.) It argues that, because an immigrant may not legally remain in the United States without being admitted, any unadmitted immigrant remaining in the United States must be treated as "seeking admission" and subject to § 1225(b)(2). (Doc. No. 12, at 4 (citing 8 U.S.C. §§ 1101(a)(13), 1182(a)(6).) Section 1226(a), as the government argues, applies only to immigrants who were admitted into the United States and later became deportable. (Doc. No. 12, at 8.) The government's textual analysis is flawed.

The government's interpretation would render the term "seeking admission" entirely superfluous of "applicant for admission." Indeed, the government appears to acknowledge this. (Doc. No. 12, at 4 ("aliens present in the United States without admission or parole that are placed in removal proceedings...are applicants for admission....Such aliens are also considered 'seeking admission[.]' ").) This Court will not presume that Congress intended its words to be redundant or superfluous. *See TRW Inc.*, 534 U.S. at 31 (directing courts to construe statutes as to not render any word superfluous). If Congress meant for all "applicants for admission" to be understood as "seeking admission" it would not have used both terms in the same sentence. *Sumba v. Crowley*, No. 1:25-cv-13034, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025) ("[T]he [c]ourt rejects as implausible the government's contention that two distinct terms in the same subparagraph—'applicant for admission' and 'an alien seeking admission'—somehow bear the *same* meaning even though they are (obviously) *different* terms." (emphasis in original)).

Relatedly, the government's interpretation fails to give effect to Congress's choice to use the active term "seeking" in describing those immigrants covered by § 1225(b)(2). "Seeking" "implies action[.]" *Lopez-Campos*, 2025 WL 2496379, at *6; *see also Sumba*, 2025 WL 3126512, at *4 ("a present participle stated in the progressive tense [ ] implies some ongoing, *affirmative* action[.]" (emphasis in original)). "Seeking" requires something more than just passively being present in the United States.

16

Finally, the government's argument that § 1226(a) only applies to admitted immigrants conflicts with the statute itself. Section 1226(a) provides for discretionary bond to immigrants "arrested and detained pending" a removal determination—it makes no distinction between admitted and unadmitted immigrants. 8 U.S.C. § 1226(a). Further, § 1226(c)(1)(A, D, E) carves out certain inadmissible immigrants from § 1226(a)'s discretionary bond provision. 8 U.S.C. § 1226(c)(1)(A, D, E). If § 1226(a) only applied to admitted immigrants, it would be unnecessary for Congress to carve out certain inadmissible immigrants in § 1226(c)(1)(A, D, E). Again, this Court will not presume that Congress intended that its words would be superfluous. *TRW Inc.*, 534 U.S. at 31 (directing courts to construe statutes as to not render any word superfluous). Overall, the text of the statute supports the Court's reading.

### b. The Relevant Context and Structure

The structure of the overall statutory scheme, as described in *Jennings,* 583 U.S. 281, further supports this Court's reading. In *Jennings*, the Supreme Court described § 1226(a) as the "default rule" that applies to immigrants "present in the country" including immigrants "who were inadmissible at the time of entry[.]" *Id.* at 288. Meanwhile, the Supreme Court described § 1225(b) in more specific terms. The Supreme Court noted that § 1225(b) operates within a process that "generally begins at the Nation's borders and ports of entry[.]" *Id.* at 287. The Supreme Court further noted that "§ 1225(b) applies primarily to aliens seeking entry into the United States[.]" *Id.* at 297. The Supreme Court's analysis in *Jennings* thus supports the Court's reading that § 1225(b)(2) applies to immigrants seeking to lawfully enter the United States, while § 1226(a) provides a default rule applicable to immigrants detained in the United States, regardless of whether they were originally admitted.

The government, however, argues that the Supreme Court's analysis in *Jennings* supports its reading. (Doc. No. 12, at 4–5, 13.) First, the government points to the Supreme Court's statement that § 1225(b) "applies primarily to aliens seeking entry to the United States ('applicants for admission' in the language of the statute.)" (Doc. No. 12, at 4–5 (citing *Jennings*, 583 U.S. at 297).) Using this single, isolated sentence, the government argues that the Supreme Court understood "seeking admission" and "applicant for admission" to be one and the same and resultantly, understood § 1225(b)(2) to apply to all unadmitted immigrants in the United States. But when reading *Jennings* as a whole, it becomes clear that the Supreme Court did not construe § 1225(b) to apply so broadly. The Supreme Court understood § 1225 to operate "at the Nation's borders and ports of entry" and involve the "inspect[ion] [of immigrants] by immigration officers[.]" *Jennings*, 583 U.S. at 287. This language does not indicate broad application to all unadmitted immigrants in the United States. Rather, as other courts in the Sixth Circuit have found, this language indicates that § 1225(b)(2) applies to those arriving in the country. *See, e.g., Contreras-Cervantes v. Raycraft*, No. 2:25-cv-13073, 2025 WL 2952796, at *7 (E.D. Mich. Oct. 17, 2025).

17

Next, the government argues (Doc. No. 12, at 13) that the Supreme Court in *Jennings* characterized § 1226 as applying only to admitted immigrants present in the United States. This is incorrect. As discussed above, *Jennings* describes § 1226 as governing immigrants "present in the country" including immigrants "who were inadmissible at the time of entry[.]" *Jennings*, 583 U.S. at 288. From this language, the Supreme Court clearly contemplated § 1226(a)'s application to unadmitted immigrants present in the United States. In light of the foregoing, the structure of the relevant statutes, as described by the Supreme Court in *Jennings*, supports the Court's reading.

### c. The Relevant History

The history of § 1226(a) further supports the Court's reading. Like other courts within the Sixth Circuit, *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 9, 2025); *Contreras-Lomeli v. Raycraft*, 2:25-cv-12826, 2025 WL 2976739, at *7 (E.D. Mich. Oct. 21, 2025), this Court finds persuasive the historical analysis contained in *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025):

> Before [the Illegal Immigration Reform and Immigration Responsibility Act of 1994 ("IIRIRA")] passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. [ ] This predecessor statute, like Section 1226(a), included discretionary release on bond. [ ] Upon passing IIRIRA, Congress declared that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." [ ]

*Id.* at 1260 (internal citations omitted). Immigrants unlawfully in the United States were within the scope of § 1226(a)'s predecessor, and Congress declared § 1226(a) to have the same scope as its predecessor. It thus stands to reason that immigrants unlawfully in the United States fall within § 1226(a).

The government, however, argues that the history of the IIRIRA supports its reading. (Doc. No. 12, at 8.) As the government argues, the IIRIRA was intended "to eliminate 'an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." (*Id.* (quoting *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020)).) Thus, as the argument goes, this Court should avoid any reading of the statute that would give immigrants who have already unlawfully entered the country any more procedural rights than those who attempted to enter at a port of entry.

The government's historical analysis is overbroad. The IIRIRA "did not fully disrupt the old system, including the system of detention and

18

release[.]" *Salcedo Aceros v. Kaiser*, No. 25-cv-6924, 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025) (citing H.R. Rep. 104-469, 229 (1996)). While the IIRIRA was intended to address *some* inequities in the treatment of arriving immigrants and those already present, Congress also intended, as discussed above, to leave in place the discretionary bond framework available to most immigrants at the time. *Rodriguez*, 779 F. Supp. 3d at 1260. In other words, "Congress'[s] concern about adjusting the law in some respects to reduce inequities in the removal process did not mean Congress intended to entirely up-end the existing detention regime by subjecting *all* inadmissible noncitizens to mandatory detention[.]" *Salcedo Aceros*, 2025 WL 2637503, at *12 (citations omitted) (emphasis in original). The government's historical analysis thus fails.

The government's argument also fails to account for § 1226's recent history via the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). The Laken Riley Act added § 1226(c)(1)(E) which, in relevant part, mandates detention of immigrants who are (1) in the United States without admission or parole and (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). If, as the government argues, § 1226(a) only applied to admitted immigrants, Congress would not have had to carve out certain unadmitted immigrants using the Laken Riley Act. Further, if, as the government argues, § 1225(b)(2) mandates detention of all unadmitted immigrants, then it would be pointless for Congress to mandate the detention of a subset of those unadmitted immigrants using the Laken Riley Act.[3] This Court "will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Lopez-Campos*, 2025 WL 2496379, at *8 (citation omitted); *Barrera*, 2025 WL 2690565, at *4 (citation omitted).

### d. Relevant Case Law

In the end, the Court finds the government's interpretation unpersuasive.[4] And the Court is not alone. The vast majority of courts to consider it have rejected the government's interpretation.[5] Indeed, almost every—if not every—district court within the Sixth Circuit to consider it has rejected the government's interpretation.[6] These courts found, as the Court finds here, that immigrants like Chavez who have spent years in the United States before being detained are subject to 8 U.S.C. § 1226(a)'s discretionary bond provision—not 8 U.S.C. § 1225(b)'s mandatory detention provision.

In support of its argument, the government cites three non-binding, out-of-circuit decisions in which district courts adopted the government's interpretation. (Doc. No. 12, at 2 (citing *Chavez v. Noem*, No. 3:25-cv-2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump*, No. 8:25-cv-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Sandoval v. Acuna*, No. 6:25-cv-1467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025)).) The Court finds these decisions unpersuasive for the same reasons it finds the government's arguments unpersuasive: (1) they fail to give effect to, and indeed

19

render superfluous, the term "seeking admission" in § 1225(b)(2) and portions of § 1226(c); (2) they fail to read the Supreme Court's analysis in *Jennings* wholistically, and thus fail to properly consider the overall statutory scheme; and (3) they overgeneralize the relevant legislative history and thus fail to see that Congress intended to maintain the discretionary bond framework. Other courts within the Sixth Circuit have rejected these cases. *See Orellana*, 2025 WL 3006763, at \*4 (rejecting *Chavez* and *Vargas Lopez*); *Mejia v. Woosley*, No. 4:25-cv-82, 2025 WL 2933852, at \*3 n.2 (W.D. Ky. Oct. 15, 2025) (rejecting *Chavez* and *Vargas Lopez*); *Moralez-Martinez v. Raycraft*, No. 25-cv-13303, 2025 WL 3124695, at \*6 n.3 (E.D. Mich. Nov. 7, 2025) (describing *Chavez* and *Vargas Lopez* as "outliers" and adopting majority interpretation).

\* \* \*

In light of the text, structure, and history of the relevant statutes, the Court rejects the government's interpretations of 8 U.S.C. §§ 1225(b)(2) and 1226(a). Section 1225(b)(2) does not apply to all unadmitted immigrants present in the United States, and § 1226(a) is not limited to immigrants admitted into the United States. Rather, § 1226(a) applies broadly to immigrants arrested and detained pending removal determinations. Meanwhile, § 1225(b)(2) carves out from § 1226(a) those immigrants who are (1) either present in the United States without having lawfully entered after inspection and authorization by an immigration officer or arriving in the United States and (2) seeking lawful entry via inspection and authorization by an immigration officer. Chavez, who is currently detained pending a removal determination and who is not seeking to lawfully enter the United States, is governed by § 1226(a) and its discretionary bond framework.

Case No. 4:25-cv-2061, 2025 WL 3187080, at \*\*3-8 (N.D. Ohio Nov. 14, 2025).

The Fifth Circuit's recent decision in *Buenrostro-Mendez* does not change the above analysis, as it is not controlling precedent, and this Court recently rejected the reasoning of the majority's opinion in *Buenrostro-Mendez*. *See Lopez*, 2026 WL 395202, at \*\*6-10 (holding petitioner was not subject to detention under § 1225(b)(2)). The Court is troubled by Respondents' failure to disclose, let alone attempt to distinguish, the line of cases in this district rejecting Respondents' arguments that petitioners such as Martinez Hernandez are subject to mandatory detention under § 1225(b)(2).

The Court agrees with the well-reasoned decisions by this Court rejecting the application of mandatory detention under § 1225(b)(2) in similar cases. *See, e.g., Ramirez Moreno*, 2026 WL 496634, at

20

**3-6; *Lopez*, 2026 WL 395202, at **6-10; *Hu*, 2026 WL 539117, at **6-8; *Gonzalez Lopez*, 2025 WL 3280344, at **4-6; *Chavez*, 2025 WL 3187080, at **3-8.  In addition, this Court finds that "because [Martinez Hernandez's] detention is governed by § 1226(a)'s discretionary bond framework," the government's application of § 1225(b)'s mandatory detention provisions to Martinez Hernandez violated her due process rights.  *Chavez*, 2025 WL 3187080, at *8.

Because Martinez Hernandez should be considered for release on bond under §1226(a), the undersigned recommends the Court GRANT her petition and order the immigration court to conduct a bond hearing under 8 U.S.C. § 1226(a).

The Court notes that Martinez Hernandez argues that the "appropriate remedy" in her case is "immediate release." (Doc. No. 10 at 16.)  Martinez Hernandez asserts that "[i]f this Court determines that § 1226(a) controls Petitioner's detention, then Respondents have provided no lawful basis for Petitioner's detention and Petitioner must be released." (*Id.*) (citing *Gimenez Rivero v. Mina*, 6:26-cv-66-RBD-NWH, 2026 WL 199319 (M.D. Fla. Jan. 26, 2026)).  In the alternative, in the event the Court finds a bond hearing under § 1226(a) is the appropriate remedy, Martinez Hernandez asks for the Court to "mandate" the following procedural "safeguards": (1) "Respondents should be ordered to hold a hearing within 7 days or else release Petitioner"; (2) "this Court should order that the Government bears the burden of establishing by clear and convincing evidence that Petitioner poses a danger or flight risk"; and (3) the Court should "retain jurisdiction to review the immigration judge bond decision to ensure compliance with the Court's order and due process." (*Id.* at 17.)  The Court notes that Respondents failed to address these arguments. (Doc. No. 17.)

The undersigned declines to recommend Martinez Hernandez's immediate release, and instead recommends, consistent with other decisions of this district, that Respondent provide Martinez Hernandez with a bond hearing pursuant to § 1226(a) within seven (7) days of the adoption of this Report and

Recommendation.  While the undersigned recognizes and understands Martinez Hernandez's concerns, the undersigned further declines to recommend what burden the Government bears at the bond hearing. Furthermore, in the absence of any authority cited by Martinez Hernandez regarding retention of jurisdiction to review the IJ's bond decision, the undersigned also declines to recommend the Court retain jurisdiction for such a purpose.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Court DISMISS all Respondents from this action except for Respondent Raycraft.  It is further recommended that the Court GRANT Martinez Hernandez's Petition and ORDER Respondent to provide Martinez Hernandez with a bond hearing under 8. U.S.C. § 1226(a) within seven (7) days of the adoption of this Report and Recommendation.

Date: March 12, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**